IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | |
|---|---|
| **PERMASTEELISA CS CORP. f/k/a GLASSALUM INT'L CORP.,** : | |
| : | **Case No. 2:06-cv-569** |
| **Plaintiff,** | |
| : | **Judge Holschuh** |
| v. | |
| : | **Magistrate Judge Kemp** |
| **THE AIROLITE CO., LLC and NORMAN L. MURRAY,** : | |
| **Defendants.** : | |

### MEMORANDUM OPINION & ORDER

Plaintiff Permasteelisa CS Corporation brought suit against The Airolite Company, LLC, and Norman L. Murray alleging a fraudulent transfer of assets. A bench trial is scheduled to begin on July 28, 2008. This matter is currently before the Court on Plaintiff's motion for an adverse inference and sanctions based on spoliation of evidence (Record at 77), and on Defendants' motions to strike Plaintiff's motion as untimely (Record at 80, 81).

**I.  Relevant Factual Background and Procedural History**

Permasteelisa contracted with Turner Construction Company to perform curtainwall work on a 38-story building in New York City. Permasteelisa entered into a subcontract with The Airolite Company ("TAC"), a manufacturer of architectural louvers. Shortly after the louvers were installed, the owner of the building reported problems with rattling and fluttering noises. Permasteelisa notified TAC of the complaints and demanded that TAC remedy the problem. When TAC refused, Permasteelisa undertook repairs at its own expense. On July 26, 2004, Permasteelisa filed a breach of warranty suit against TAC in the United States District Court for the Southern District of New York, Case No. 04CV05796 (AKH) ("the underlying

action"), to recover the costs it had incurred.

Just one week later, on August 2, 2004, Norman Leight Murray, TAC's president, entered into an asset purchase agreement with Greenheck Fan Corporation. He agreed to sell TAC's assets, its brand name and goodwill for a total of $1,572,460.97. Greenheck established The Airolite Company, LLC ("Airolite") to continue TAC's business operations. Airolite agreed to hire Murray as a sales director. Almost all of the proceeds from the sale were used to satisfy TAC's outstanding secured debt. The remainder of the proceeds, along with proceeds from the sale of TAC's real estate, collection of accounts receivable, and the sale of equipment excluded from the asset purchase agreement, went to pay unsecured creditors. Permasteelisa did not learn of the existence of the asset purchase agreement until August 18, 2005 when it first deposed Murray in the underlying action.

Permasteelisa moved for summary judgment in the underlying action and, on April 3, 2006, the United States District Court for the Southern District of New York entered judgment against Floh Corporation, TAC's successor, in the amount of $707,666.35 plus interest. By then, however, there were few remaining assets with which to satisfy the judgment.

On July 26, 2006, Permasteelisa filed this lawsuit against Airolite and Murray. Plaintiff alleges that Defendants entered into the asset purchase agreement with the intent to defraud creditors. Plaintiff therefore asks the Court to void the conveyance and order Defendants to pay the outstanding judgment. On December 31, 2007, the Court denied Defendants' motions for summary judgment. A Final Pretrial Conference was held on April 3, 2008. Trial was originally scheduled for April 28, 2008, but on April 22, 2008, the Court vacated the trial because of a conflict on the Court's docket. A bench trial is now scheduled to begin on July 28, 2008.

On April 21, 2008, more than two weeks after the Final Pretrial Conference and one week before the original trial date, Plaintiff filed a motion asking the Court to draw an adverse inference based on spoliation of evidence. Plaintiff notes that Murray testified at his April 16, 2007 deposition that sometime within six months after the asset purchase agreement was finalized, all of TAC's computers were discarded and replaced with updated equipment. His discarded computer contained a "long string of e-mails" consisting of correspondence related to the negotiation and closing of the asset purchase agreement. (Murray Dep. at 28-32).

Citing Brokamp v. Mercy Hospital Anderson, 132 Ohio App. 3d 850, 726 N.E.2d 594 (Ohio Ct. App. 1999), Plaintiff argues that because Murray intentionally destroyed relevant evidence, Ohio law requires the Court to draw an adverse inference that the discarded e-mails would be unfavorable to Defendants, and to make a finding that TAC's assets were transferred in bad faith with the purpose of defrauding Permasteelisa.[1] Rather than addressing the merits of Plaintiff's motion, Defendants both filed motions to strike Plaintiff's motion as untimely. The Court turns first to the motions to strike.

## II. Defendants' Motions to Strike Plaintiff's Motion as Untimely

Defendants argue that Plaintiff's motion should be stricken from the record because even though Plaintiff has known since April 16, 2007 that Murray discarded his computer, Plaintiff waited until April 21, 2008 -- just one week before trial was set to begin -- to bring it to the Court's attention. Defendants note that Plaintiff sought no extensions of the Court's June 1, 2007 deadline for filing discovery motions or the February 29, 2008 deadline for filing motions

---

[1] The Sixth Circuit has held that in diversity cases such as this one, the rules that apply to appropriate sanctions for spoliation of evidence are defined by state law. See Nationwide Mutual Fire Ins. Co. v. Ford Motor Co., 174 F.3d 801, 804 (6th Cir. 1999).

3

in limine. Moreover, Plaintiff did not raise the issue in the Joint Final Pretrial Order, nor did Plaintiff's counsel bring it up at the Final Pretrial Conference. Plaintiff has offered absolutely no explanation for the delay. To the extent Plaintiff's motion could be interpreted as a motion for sanctions under Federal Rule of Civil Procedure 11, Defendants also argue that Plaintiff failed to comply with "safe harbor" provision of that Rule.

Plaintiff, however, denies that its motion was brought pursuant to Rule 11. Moreover, Plaintiff contends that the deadlines for filing discovery motions and motions in limine are inapplicable. According to Plaintiff, its motion for an adverse inference based on spoliation of evidence is akin to a request for a jury instruction which, pursuant to Federal Rule of Civil Procedure 51, can be submitted to the court "[a]t the close of the evidence or at any earlier reasonable time that the court orders." Fed. R. Civ. P. 51.

The Court, however, is unconvinced. On its face, Rule 51 applies only to jury trials and Plaintiff offers no authority for the proposition that it extends to bench trials. In the Court's view, Plaintiff has waived the right to ask for an adverse inference based on spoliation of evidence. Plaintiff has known about the alleged spoliation for more than one year. Plaintiff had plenty of time to file a motion for discovery sanctions.[2] In the alternative, Plaintiff could have raised the issue in the Final Pretrial Order. The Final Pretrial Order, however, states that "[t]here are no special issues of law reserved other than those implicit in the foregoing issues of fact." (Final Pretrial Order at 7). It also states that "[d]iscovery has been completed" and that jury

---

[2] One Ohio appellate court has held that although a motion in limine may also be used as a means to sanction destruction of evidence, "the better method to raise 'spoliation of evidence' within the context of a civil case is for sanctions under Civ. R. 37." Cincinnati Ins. Co. v. General Motors Corp., No. 94OT017, 1994 Ohio App. LEXIS 4960, at *9 n.3 (Ohio Ct. App. Oct. 28, 1994).

instructions are "[n]ot applicable." (Id. at 8).

The purpose of a Final Pretrial Order is to conclusively fix the issues that remain to be litigated. Issues and theories of recovery not included in the Final Pretrial Order are generally deemed to be waived. See, e.g., Ghandi v. Police Dep't of the City of Detroit, 823 F.2d 959, 962-63) (refusing to consider theories of gross negligence, deliberate indifference and reckless disregard not included in pretrial order); Gregory v. Shelby County, Tenn., 220 F.3d 433, 442 (6th Cir. 2000) ("a party's failure to advance a theory of recovery in a pretrial statement constitutes waiver of that theory"). For reasons of fairness and judicial economy, the Final Pretrial Order can be modified only "to prevent manifest injustice." Fed. R. Civ. P. 16(e).

In this case, where Plaintiff mentioned nothing of the spoliation issue in the Final Pretrial Order or at the Final Pretrial Conference, and where Plaintiff has offered absolutely no explanation for waiting until just one week before trial to bring this matter to the Court's attention, the Court finds that Plaintiff has waived this issue. Moreover, under these circumstances, no manifest injustice will result from refusing to consider Plaintiff's request at this late date.

Defendant Airolite has also moved for an award of costs pursuant to Federal Rule of Civil Procedure 16(f)(2). That Rule provides for an award of reasonable expenses, including attorney's fees, incurred as a result of the opposing party's failure to obey a scheduling order or pretrial order, unless the Court finds the noncompliance to be substantially justified or other circumstances make such an award unjust. In this case, because there was no clear deadline for filing a motion for an adverse inference based on spoliation of evidence, the Court denies Airolite's request.

**III.    Conclusion**

For the reasons stated above, the Court **GRANTS** Defendants' motions to strike as untimely Plaintiff's motion for an adverse inference based on spoliation of evidence.  (Record at 80, 81).  Plaintiff's motion (Record at 77) is **DENIED**.

**IT IS SO ORDERED.**


Date: June 18, 2008                                     **/s/ John D. Holschuh**
                                                                    John D. Holschuh, Judge
                                                                    United States District Court